IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| GODWARE, | ) | |
| and CHARLES F. MORTON, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 250481N |
| | ) | |
| v. | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Defendant's denial of GODWARE's property tax exemption for the 2025-26 tax year for property identified as Account R274443 (subject property) based on failure to meet the qualifications under ORS 307.140. A trial was held remotely on February 19, 2026. Charles F. Morton (Morton) appeared and testified on behalf of Plaintiffs. Veronica Clevidence (Clevidence), tax exemption specialist, appeared and testified on behalf of Defendant. Defendant's Exhibits A through H were received without objection. Plaintiffs did not offer any exhibits, relying instead on Defendant's exhibits and the materials filed with Plaintiffs' Complaint.

I. STATEMENT OF FACTS

GODWARE is a faith-based nonprofit corporation that identifies itself as a church under IRC section 508(c)(1)(A). (Complaint at 1; Def's Ex G at 1.) Its Tenets of Belief state that the church believes in God, Jesus, and the Holy Spirit and believes its members should "preserve and proclaim" the truth of God's word. (Def's Ex G at 1-2.) This is part of the church's missionary work. (*Id.* at 2.)

Morton is the President and incorporator of GODWARE. Morton testified that he spreads the word of God through missionary trips and through GODWARE's podcasts and other

materials, which include books, CDs, and clothing. Podcasts and written materials are often created at the subject property and physical inventory is stored there before it is sold. (Def's Ex H at 1-4.) Morton testified that he uses the proceeds from sales to support GODWARE's missionary trips. Morton formally incorporated GODWARE as a nonprofit corporation in 2022 and retired from his job as an IT specialist in 2023. (*See* Ptfs' Ex, Aug 5, 2025 (Articles of Incorporation).) By the time of his retirement, Morton had already written and published some of the books that later became part of GODWARE's message. Morton testified that it was only after he retired that he was free to devote his full time and service to GODWARE, including by continuing to create and spread its messaging.

Morton testified that he purchased the subject property around 2000 and has lived there with his wife since the purchase. The subject property is a 3,439 square foot residence that includes a kitchen, dining room, parlor, living room, office, basement, spare rooms, yard, and three-car garage. (Def's Ex H at 1-4.) Morton reported to Defendant and testified to the court that the entire property is used for church-related activities. (*See id.* at 1.)

Morton testified that church activities regularly occur at the subject property, including daily individual prayers, weekly group prayers, and monthly focus or board meetings. (*See also* Def's Ex E at 1.) Since the COVID-19 pandemic, group activities occur online but are hosted from the subject property. GODWARE also hosted special events at the subject property during the tax year at issue, which included planning meetings for a mission trip, a family reunion for Morton's family, an inspirational poetry reading, sleepovers for Morton's grandkids, and training activities with kids. (Def's Ex E at 2.)

Clevidence testified that she denied GODWARE's application for exemption because the subject property did not qualify as a house of worship. The denial letter stated the reason for

denial as: "The organization and use do not qualify in accordance with ORS 307.140[.]" (Def's Ex C at 1.) Plaintiffs appealed that denial, stating that GODWARE operates exclusively for religious and charitable purposes and qualifies for an exemption for the 2025-26 tax year. (Ptfs' Compl at 1.)

## II. ANALYSIS

The issue in this case is whether the subject property qualifies for a property tax exemption under ORS 307.140[1] based on GODWARE's use for creating and spreading inspirational messages, hosting prayers and meetings, and housing Morton and his wife. To qualify for an exemption under ORS 307.140, property owned or being purchased by a religious organization must qualify as either a house of public worship or an additional building that is "used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes[.]" ORS 307.140(1). "However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section" is taxable. *Id*. As the parties seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence that their claim of exemption meets the relevant statutory requirements. ORS 305.427.

A. *House of Public Worship*

Houses of public worship or additional buildings are two classes that are "mutually independent bases for exemption[.]" *Lighthouse Mission Church Inc. v. Multnomah County Assessor*, TC-MD 200145G, 2021 WL 1513815 at *1 (Or Tax M Div, Apr 15, 2021) (*Lighthouse*). The first question is whether the subject property qualifies as a house of public worship. That term is not defined in the statute, but this court has said it includes "ordinary

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2023.

church edifices owned and used in the usual way for religious worship." *Archdiocese of Portland v. Dept. of Rev.*, 5 OTR 111, 115-16 (1972), *aff'd sub nom. Archdiocese of Portland in Oregon v. Dept. of Rev.*, 266 Or 419, 513 P2d 1137 (1973) (citations omitted). The Oregon Supreme Court has also granted exemption to a former church building used by a nontraditional church to "congregate[] on a weekly basis to discuss and share their beliefs" and to share "church teachings" with "interested outsiders." *Foundation of Human Understanding v. Dept. of Rev.*, 301 Or 254, 262, 722 P2d 1 (1986) (*Foundation of Human Understanding*). However, a 230-acre farm property used by an organization with 17 to 22 members for various spiritual activities did not fall within the meaning of a house of public worship. *Golden Writ of God v. Dept. of Rev.*, 9 OTR 475, 478 (1984), *aff'd*, 300 Or 479, 713 P2d 605 (1986). "For a whole building to qualify for exemption as a house of public worship, religious worship must be the building's primary use." *Lighthouse*, 2021 WL 1513815 at *2.

Here, the subject property primarily functions as a residence for Morton and his wife, with rooms suited to that purpose, such as a kitchen, dining, and living room. Even though Plaintiffs engaged in some religious use of the subject property during the tax year at issue – individual and group prayer, inspirational readings, training activities, and other similar events – no evidence was presented to support a finding that members of the public regularly congregated at the subject property for religious worship. Having found the subject property was used primarily as a residence and not a house of public worship, the court next considers whether the subject property qualifies for exemption as an additional building.

B. *Additional Building*

Under ORS 307.140, an additional building qualifies for exemption if it is "used solely" for statutorily enumerated purposes by a religious organization. One enumerated use is for

charitable purposes, which are broadly construed to include the advancement of religion. *German Apostolic Christian Church v. Dept. of Rev.*, 279 Or 637, 642, 569 P2d 596 (1977) (*German Apostolic*). If the charitable use is the advancement of religion, then the use must primarily benefit the church and be reasonably necessary to further its religious purposes. *Id.*

When considering whether property is reasonably necessary to further religious purposes, this court has distinguished between residences and nonresidences. *Washington County Assessor v. West Beaverton Congregation of Jehovah's Witnesses, Inc.*, 18 OTR 409, 418 (2006) (*Jehovah's Witnesses*).[2] For a residence to be exempt, two requirements must be met. "First, the official living in the residence must be required to live there by either church doctrine or practical necessity. * * * Second, the proximity of the residence to the house of worship[3] must be necessary to further religious objectives." *Id.* at 419. Once the organization has met its burden of proving necessity, the court will examine the actual use to determine if it is consistent with the claimed necessity. *German Apostolic*, 279 Or at 643. However, "the actual use of the [building] may be highly relevant in determining its necessity." *Id.*; *see also* Oregon Administrative Rule (OAR) 150-307-0140(1)(c), (d) ("The property * * * must be reasonably necessary to accomplish the religious objectives of [the] organization [and the] actual use of the property must be consistent with the claimed necessity").

OAR 150-307-0150(1) states that "[a] parsonage or caretaker residence is considered primarily a residence even though incidental religious use may occur there." The rule gives

---

[2] Typical residences used by religious organizations include parsonages, convents, and caretakers' residences. *See Jehovah's Witnesses*, 18 OTR at 415-419 (reviewing case law).

[3] Although the *Jehovah's Witnesses'* court required proximity to "the house of worship," the cases it cites more broadly construe such necessary proximity to the site carrying on the education, benevolent, or charitable purpose—not limited to houses of worship. *See, e.g.*, *Multnomah School of Bible v. Multnomah County,* 218 Or 19, 343 P2d 893 (1959) (residence located on the campus of a religious college); *Lewis & Clark College v. Comm'n*, 3 OTR 429 (1969) (college president's residence located near campus).

some examples of activities that do *not* qualify a residence for exemption, such as opening and closing the house of worship on a daily basis, living close to the house of worship for the sake of convenience, and providing living quarters for the pastor's family. OAR 150-307-0150(2). Case law further illustrates the application of the test for residences.

In *Washington County v. Department of Revenue*, the court found a parsonage only incidentally, not primarily, benefitted a church. 11 OTR 251, 254 (1989). The church required the pastor to live at the parsonage, and he frequently used several areas for church-related meetings, classes, or events—including the kitchen, family room, attic bedroom, garage, and lawn. *Id.* at 252, 254. However, the court found that the parsonage was built primarily to house the pastor and his family and that he continuously used the property as his sole residence. *Id.* at 254. It further found that "[t]he fact that some parts of the parsonage are used for purposes connected with the work of the church do not make it a building used primarily for the benefit of the church." *Id.* at 254-55. Thus, the court concluded that the "the use of the property to accomplish religious purposes [was] only incidental or secondary to the primary purpose of providing a residence for the pastor and his family." *Id.* at 254. Except for the pastor's study, which was stipulated as exempt, the court denied an exemption for the residence. *Id.* at 255.

The court in *Foundation of Human Understanding* concluded that it was not necessary for a caretaker to reside near a house of worship, though his availability was beneficial to facilitate access to and care of the property. 301 Or at 263. In that case, the caretaker occupied a residence and was available at all hours "to receive calls, protect the property, sell merchandise and counsel people." *Id.* at 256. However, the court concluded that the residence near the church building was merely beneficial, not necessary, to the church's purposes, reasoning that the caretaker was "not needed *at that location*" to perform his duties. *Id.* at 263 (emphasis

added); *see also Jehovah's Witnesses*, 18 OTR at 422 (church official was "not required by church doctrine or practical necessity" to live in residence with close proximity to the house of worship).

In *Berst v. Benton County Assessor*, the court denied exemption for a property "used primarily as a residence for [a minister] and his family." TC-MD 060529C, 2007 WL 1730136 at *5 (Or Tax M Div, June 13, 2007). The property was owned by the minister, had been his long-time family home, and was "indistinguishable from many other homes in Oregon." *Id.* The religious use of the home was for a daily broadcast, but the court found that could occur anywhere. *Id.* Although church rules required the minister to live in the house, he wrote those rules, and the court found that "they inure[d] to his benefit." *Id.*

Here, Plaintiffs have the burden of proving that the primary use of the subject property was for the benefit of GODWARE and was reasonably necessary to further its religious purposes. Because the subject property was a residence, Plaintiffs must show that Morton was required by either church doctrine or practical necessity to live on the premises and that the residence's proximity to the church was necessary to further the church's purposes.

The court finds that the primary use of the subject property is as a residence, and the benefits to GODWARE are incidental. As in *Berst*, the subject property is indistinguishable from other homes in Oregon and serves as Morton's family home. Some church events appear to be primarily family events, such as family reunions and sleepovers with grandkids. Morton lived in the residence for years before seeking exemption. He testified that he devoted his full time and effort to GODWARE after he retired in 2023. However, Plaintiffs presented no evidence that the character or use of the subject property changed at that time.

/ / /

Even if the subject property was primarily used for GODWARE, Plaintiffs have not demonstrated that it was necessary for Morton to live there. GODWARE's Tenets of Belief contain no requirement that Morton live at the property, and no evidence supports a finding of practical necessity based on proximity to the church. GODWARE's mission is to spread the word of God and is accomplished through virtual services, the sale of merchandise, and formal mission trips. Those functions could be easily accomplished elsewhere. Providing housing for a pastor and his family by itself does not qualify a property for exemption.

Plaintiffs have not demonstrated that the subject property primarily benefits GODWARE or that Morton's use of the property is reasonably necessary to accomplishing GODWARE's stated purposes. Therefore, the subject property is not exempt under ORS 307.140. The court next examines whether the subject property qualifies for partial exemption.

C.      *Partial Exemption*

A partial exemption is allowable in certain circumstances when property is used for a mix of "qualifying and nonqualifying activities." *Christian Meeting Place v. Washington County Assessor*, TC-MD 021173C, 2003 WL 22119848 at *3 (Or Tax M Div, Sept 2, 2003); *see, e.g.*, *Washington County*, 11 OTR at 252, 255 (study "used continuously for church purposes" was exempt while the remainder of the residence was taxable). Here, the subject property included an office that may have been used for some qualifying religious activities, but the court received insufficient evidence to conclude that the office was used primarily to benefit GODWARE and that it was reasonably necessary for that purpose.

Morton uses various areas of the subject property to store and sell GODWARE materials—including books, CDs, and clothing. The precise areas of the subject property used for those purposes were not clearly identified. For example, a photo of a spare room used in part

for GODWARE storage was also used for personal storage.  (*See* Def's Ex H at 2.)  In any event, "any house of public worship or other additional buildings or property which is kept or used as a store or shop" is taxable.  ORS 307.140.  The court finds no basis to grant partial exemption in this case.

### III.  CONCLUSION

Upon careful consideration, the court concludes that the primary use of the subject property was as Morton's personal residence, and religious use by GODWARE was secondary and incidental.  Further, Morton is not required by church doctrine or practical necessity to live at the subject property.  Now, therefore,

IT IS THE DECISION OF THIS COURT that the subject property is not entitled to an exemption under ORS 307.140 for the 2025-26 tax year.  Plaintiffs' appeal is denied.

_____

*To appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court. Appeals are accepted by electronic filing; by mail at 1163 State Street, Salem, OR 97301-2563; and by hand delivery to 1241 State Street, Salem, OR, Floor 4R.*

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on July 7, 2026.*